Richardson, J.,
dissenting. — The motion for a new trial depends upon this question, was the Judge correct in charging that the rights of Ann Beck could not be affected by the acts ofEdmund Rhett'? It was assumed that Edmund Rhett had not been made her agent by the. letter written to Albert Rhett, although Albert and Edmund Rhett were partners at law. This question is new, and requires consideration. The letter to Albert Rhett was in these words: “On the suggestion of Mr. Beck, I enclose a mortgage of some negroes of his to Miss Beck. My purpose is, to enable you to protect her interests from all Beck’s creditors.” This was the power of attorney. At the time of the sale, Albert Rhett did not even know of such a letter, and of course Edmund Rhett could not have acted with his privity. He must, then, have been a mere volun *265 teer, unless he could himself derive the rights of an agent from the letter to Albert Rhett, and bad authority from it to ratify the sale of Richard, which he had forbidden in the first instance.
But there are many objections to such a construction in favor of Edmund Rhett’s agency: ’
1st. The authority was in writing, and confined to Albert Rhett; and he, not even knowing of it, could not have accepted it. It follows that no one could have had the right to assume his agency, or acceptance, whén neither existed.
2dly. It was a special agency under Mr. Williams, the general agent of Ann Beck, and ought to be construed strictly and confined to the special agent named by the general agent. No one else ought to implicate him or his principal.
3d. It was an agency in fact, and not to an attorney at law to do professional business, in its terms to protect her interests from all Beck’s creditors.
This could not give the power to sell or convey away the property. It was to protect and guard it from being sold at all, in order to protect her right and title to the ne-groes, or to interpose her prior claim to all creditors.
It is the same as if to protect her interests in a tract of land, or piece of furniture, which would be neither to sell nor destroy her title, but to protect it. This may be a very strict construction, but the agency had -no more of a professional law character, than if it had been to pay her taxes, or to look to her interest in a consignment of goods, claimed by another person, or to superintend her plantation or negroes.
A lawyer acts often as an agent in fact; and the rule that the principal cannot be bound, unless by his own agent, acting within the authority delegated, must be preserved, else we infract the first principle of the law of principal and agent, and make one man bound by the acts of another, without his own consent.
It is upon this strict view, that I question whether Albert Rhett himself could have ratified the sale made by sheriff Rice, and kept within the special written agency of Williams’s letter. How could such an act her in *266 terests ¶ But I feel clear that Edmund Rhett had no agency whatever. ' But assume, for a moment, that the power to sell the negro was given, and also, that the professional partner of Albert Rhett, although unknown to Ann Beck, became also her agent, by construction of law — this would he going very far by implication, assuredly.
But, shall we go farther, and say that the two Rhetts were not only her agents, hut her joint and several agent'? Where can we find necessity or reason for this implication'? If a stranger must be introduced by legal intendment, why go another step, and say such stranger may act without the advice, consent, or knowledge, or even before the acceptance of Albert Rhett, the only agent practically confided in and named by the principal 'l Should we-not rather say, under any construction, that Edmund Rhett could be no more than united jointly, and not severally, with Albert Rhett, and, therefore, his several or individual acts could not affect the rights of Ann Beck 1 Under any other and further implication, she would be deprived of her rights by law, without her own consent, privity, or any confidence apparent from her letter of attorney to Albert Rhett.
The implication that operates so strongly, should be unavoidable, and from unquestionable premises, in order to force us to such a conclusion, by mere construction.
I need scarcely here do more than refer to the settled doctrine of joint agencies.
Judge Story on Agency, p. 44, sums up the doctrine, as made by adjudged cases, thus: “Where an authority is given to two or more persons to do an act, the act is valid to bind.the principal only when one of them concur in doing it. For the authority is construed strictly, and the power is understood to be joint, and not several,” &c. “So,” he continues, “if an authority-is given to two persons jointly to sell the property of the principal, one of them cannot separately execute the authority.” “Indeed, so strictly is the authority construed, that, if it be given to three persons jointly and severally, two cannot properly execute it; but it must be done by one or by all.” “ However, the rule of interpretation is not so- rigid as to overcome the apparent intentions-of the party, if the -.vyo^s .can be -so construed as to reach the case. Thus, if an ap- *267 thorify be given A. B., or either of them, a joint or several execution will be valid.”
It is plain, from this exposition, that powers to two or more persons, are strictly and always joint, unless literally or unquestionably several from their intent and necessity. There is very little room for constructive intendments in the law of agencies. But there is a caution in the doctrine in dealing with the rights of the absent, that is most wholesome, and in just accordance with that of the statute against frauds, to suffer no man to be made liable for another’s debt or default, except upon his own written assumption. How strictly joint, then, should be the agency of any man who is joined by- implication to the named agent. Look into the facts of the case. Rice takes the letter to Albert Rhett from the post office, assumes the friendly liberty of opening it, and proceeds under the mortgage he found enclosed.' \ The transaction reaches the ears of Edmund Rhett at the moment of the sale'. He promptly forbids the sale, as-Albert Rhett is absent. But, according to the witness Branch, he afterwards told the sheriff to tender the bill of sale and demand the money. The sheriff does so, delivers the negro, and keeps the money for his own security. But, under the doctrine just laid down, I ask, in what one link, in this series of gratuitous acts, is Ann Beck to be held as assenting or implicated'? There can be no reproach to the purchaser whatever. He must stand a suit at law, that he may recover over against Rice. But his right of property depends upon the assent to the sale by Ann Beck, as indicated by her power of attorney, when united with such gratuitous acts of other persons. It' Is in those acts that I can perceive no influence to alter her -right.
She seems as little implicated in the whole transaction, as if her agent, Williams, had never written the letter to Albert Rhett, who (Rhett) repudiated the sale the moment he heard of it, although he uttered no reproach against Rice for opening the letter. And I take occasion here to state, that I never witnessed a trial, notwithstanding its contradictions, in which all parties were more free from personal or any unpleasant allusions.
As a majority of the Court think differently from me, *268 my impressions of the power of attorney, however strong, must be mistaken. • But as the point is new and peculiar, I will add a word more, on the authority of decided cases. I can find none finally adjudged, so as to be of express authority. But in that of Edmondston against Wright, 1 Campbell, p. 88, we may find a decision of Lord Ellenbo-rough, of some importance still.
Wright had negroes in Jamaica. Mr. Lecky, Edmond-ston’s partner, was his attorney on record, who had the management of the negroes; the negroes were shipped to Georgia, by order. But the captain not having a permit, the negroes were forfeited. To release them, Edmondston paid £1200, as a compensation, which he sought to recover against Wright. The question, it will be seen, was, whether the general powers of Lecky could be exercised by his partner, Edmondston. Lord Ellenborough ruled “ that it was a voluntary payment,” and held, that the plaintiff (Edmondston,) could possess no general authority, as partner of Lecky, whose poioers, as attorney on record, were clearly incommunicable; and, as manager of the gang of negroes, he (E.) was “functus officio,” after delivering them on board the ship. Verdict for defendant. Now, then, for the general agent, read Albert Rhett, and for his partner, Edmondston, read Edmund Rhett, and we may say, with the same reason, that Albert’s powers were “clearly incommunicable” to Edmund ; but communicate them, and they are not still joint powers. But the case before us is stronger, because Albert Rhett could not physically or morally have communicated his powers, as he had not accepted, and knew not of their existence, until after the sale, and after the supposed exercise of his agency by Edmund Rhett. But ought not the opposite side to be required to shew the authority for his claim to such an exception in the law of agency 1 And are we not, then, with too little reason, opening a new and wide way for the entrance of imputed agencies'? And should we not do it at least with these qualifications, that it can only follow the acceptance by the named partner'? And then we build joint, and not several agency. If so, the verdict for Ann Beck is right.
And I must be allowed to repeat now, before Albert *269 Rhett.personally accepted, and thereby created the agency to the co-partnership, no agency could arise.
Why such an agency belongs to the profession of the law, so as to be translated to Edmund Rhett, by the letter falling into his hands; or how, after it had been translated to him, it became in his hands both a joint and several agency, I cannot perceive.
In a word of common sense — how a series of liberties taken, and of trespasses done, by the sheriff, when after-wards interwoven with the hasty interference of Edmund Rhett, on account of the apparent agency of his brother, could divest the plaintiff of her rights, does not strike my understanding. Does not the gratuitous character in the beginning follow the transaction throughout, and keep the whole estranged from the plaintiffs 'l I would, therefore, support the verdict upon the established strict construction of agencies, and would not the less support it “in odium spoliatorisand so let the sheriff,* who began and ended the trespass, respond in damages to the purchaser of the negro.
O’Neall, J., concurred.